UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

In re:
   CHRISTOPHER RYAN
         DEBTOR

CHAPTER 13
CASE NO. 08-40601-MSH

**MEMORANDUM OF DECISION ON CHAPTER13 TRUSTEE'S MOTION TO DISMISS**

      This matter came before me for hearing on the Chapter 13 Trustee's Motion to Dismiss [# 26] and the Debtor's Opposition thereto [#27]. The Chapter 13 Trustee asserts that the Debtor's confirmed plan fails to address all timely filed claims and that the Debtor's failure to file an amended plan doing so constitutes an unreasonable delay, prejudicial to creditors and is grounds for dismissal under 11 U.S.C. § 1307(c)(1). The Debtor challenges the Trustee's assertion that he is required to file an amended plan or face dismissal of his case.

**FACTS**

      The Debtor filed a petition under Chapter 13 of the United States Bankruptcy Code on March 3, 2008. At that time he also filed his schedules and Chapter 13 plan. Schedule D reflected two mortgages on the Debtor's residence: A first mortgage held by IXIS Real Estate Capital Trust 2004-HE4 ("IXIS") and a second held by Wilshire Credit Corp. ("Wilshire"). Countrywide Home Loans was listed on Schedule F for notice purposes only as the servicer of the first mortgage. Schedule F listed five other unsecured claims; Ford Motor Credit ("Ford") is not listed on the schedule.

      The Chapter 13 plan was prepared utilizing the official form required by the Massachusetts Local Bankruptcy Rules ("MLBR"). The cover sheet of the plan states, among other things, that "THE CLAIMS ARE SET FORTH IN THE BANKRUPTCY SCHEDULES

FILED BY THE DEBTOR(S) WITH THE BANKRUPTCY COURT." Section I.A. of the Chapter 13 plan, which relates to secured claims, including mortgage arrears, to be paid through the plan provides as follows:

| Creditor | Description of Claim | Amount of Claim |
| --- | --- | --- |
| IXIS Real Estate Capital Trust 2004-HE4 | Home Mortgage | $24,000 |
| Wilshire Credit Corp. | Home Mortgage | $12,000 |

Section I.B., which reflects the claims to be paid by the Debtor directly to creditors, indicates that the Debtor intends to make both IXIS's and Wilshire's monthly mortgage payments outside of the plan.

Section IV of the plan lists the general unsecured claims in the aggregate amount of $26,309.  With a total payment over five years of $1,841.63 devoted to unsecured claims, the plan informs creditors that unsecured claimholders would receive a dividend of 7%.

The deadline for non-governmental entities to file proofs of claim was July 17, 2008. IXIS, Wilshire and Ford filed timely proofs of claim.  Deutsche Bank National Trust, as trustee of the certificateholders of the IXIS mortgage, filed a proof of claim asserting a secured claim in the amount of $255,956.71, including prepetition arrears of $24,097.61.  Wilshire filed a proof of claim asserting a secured claim of $69,019.10, including prepetition arrears of $12,521.95. Ford filed a proof of claim reflecting an unsecured claim in the amount of $16,792.72 arising from a deficiency after the apparent prepetition repossession and sale of its collateral.  According to the claims register, the unsecured claims total $45,220.74.  The Debtor did not file any claims objections.

The plan was confirmed on September 11, 2008.  The confirmation order requires the

Debtor to make sixty monthly payments to the Chapter 13 Trustee of $705.00 and a lump sum payment of $2,564.00 from an anticipated income tax refund.  There is no allegation that the Debtor has failed to make the required payments to date.

**POSITION OF THE PARTIES**

The Chapter 13 Trustee seeks dismissal of this case pursuant to 11 U.S.C. § 1307(c)(1) asserting that the failure of the confirmed plan to address all timely filed claims and the Debtor's failure to file an amended plan addressing such claims constitutes an unreasonable delay, prejudicial to creditors.  .

The Debtor, citing the recent Supreme Court decision in <u>United Student Aid Funds, Inc. v. Espinosa</u>, _U.S_, 130 S.Ct. 1367, 176 L.Ed2d 158 (2010, responds that he is not required to file an amended plan because the secured creditors are bound by the terms of the confirmed plan and that they retain the right to collect any unpaid arrears at the conclusion of the case.  As to the discrepancy between the plan's estimate of unsecured claims and the amount of allowed claims appearing in the claims register, created by the Ford claim, the Debtor asserts that a  non-debtor co-obligor will pay Ford's deficiency claim.  He also argues that in any event, because the plan is a "pot plan" not a fixed percentage plan, the fact that the allowed unsecured claims are higher than what is estimated in the plan is irrelevant.

**DISCUSSION**

The Chapter 13 Trustee seeks dismissal of this case under § 1307(c)(1), which permits the court to convert to Chapter 7 or dismiss a case, whichever is in the best interest of creditors, if, among other things, there is an "unreasonable delay by the debtor that is prejudicial to the creditors…."  The Trustee has failed to articulate, much less carry her burden of demonstrating, that there is such a delay.  The plan was confirmed seventeen months before the Chapter 13

Trustee filed her motion and there is no allegation that the Debtor is delinquent in his plan payments.

Rather than deny the Trustee's motion, however, I will treat it as a motion to direct the Debtor to modify his plan pursuant to 11 U.S.C. § 1329(a)(1) on the grounds that the plan must be amended to increase payments to secured and unsecured creditors and 11 U.S.C. § 1329(a)(3) to provide for the payment to Ford outside the plan by the non-debtor co-obligor. Viewed in this context, the Trustee's assertions and the Debtor's responses are considerably more comprehensible.

With respect to the Trustee's complaint that the plan fails to provide payment in full of the IXIS and Wilshire secured arrearage claims as filed, the Trustee ignores the *res judicata* effect of a confirmed plan. Although a proof of claim is *prima facie* evidence of the validity and amount of a claim, Fed. R. Bankr. P. 3001(f), a timely filed proof of claim will not establish the amount of the claim to be paid through a confirmed plan if the confirmed plan states otherwise and the creditor received notice and an opportunity to be heard but failed to object to the treatment of its claim under the plan. Factors Funding Co. v. Fili (In re Fili), 257 B.R. 370, 372 (1st Cir. B.A.P. 2001). Even a confirmation order that was erroneously entered is not presumptively void. Espinosa, 130 S.Ct. at 1380. Consequently, both mortgagees, who received notice of the plan but never objected to it, are bound by the payment terms set forth in the plan. Each will receive the lion's share of its mortgage arrearage through the plan and each will retain its claim for the balance of the prepetition arrearage to be collected after completion of the plan. Cf. In re MacKenzie, 314 B.R. 277, 279-80 (Bankr. D.N.H. 2004).

On the other hand, the Trustee's protest that, in light of Ford's timely filed unsecured proof of claim, the plan's treatment of unsecured claims is no longer feasible, has merit. To

understand why requires a determination as to the nature of the plan in this case.

A pot plan is a defined contribution plan where the amount paid by a debtor into the plan is fixed but the dividend creditors receive can vary, while a percentage plan is a defined benefit plan where the creditors' dividend is fixed but the debtor's payment can vary. In re Puglia, 2006 WL 849879 (Bankr. D. Mass. 2006).

Courts in the District of Massachusetts consistently interpret Chapter 13 plans as pot plans rather than percentage plans because pot plans reflect more closely congressional intent that Chapter 13 debtors repay their creditors through a defined contribution, namely their disposable income. In re Barbosa, 243 B.R. 562, 569 (D. Mass.), aff'd., 235 F.3d 31 (1st Cir. 2000); In re Martin, 232 B.R. 29, 34 (Bankr. D. Mass. 1999). A number of decisions base the pot plan designation on language contained in the summary of disbursements incorporated by reference into the MLBR official form confirmation order, which typically provides that unsecured creditors will receive "not less than" a specified dividend percentage. See In re Puglia, 2006 WL 849879 at *4 (language in summary that unsecured creditors would receive "a dividend *no less than* ...sets a floor but no ceiling"); In re Smith, 334 B.R. 26, 38 (Bankr. D. Mass. 2005) (trustee not required to seek modification to increase dividend as plan was a pot plan because confirmation order stated unsecured creditors would receive "no less than 10%"); Stamm, 265 B.R. 10, 13 (Bankr. D. Mass 2001) (citing the "no less than" language as a basis for finding the plan was a pot plan). Indeed, the order confirming the instant plan incorporates by reference a summary which, as in the foregoing cases, states "the Plan provides for a *minimum* 7% dividend payment." (Emphasis added).

What becomes clear in light of the foregoing is that the typical Massachusetts Chapter 13 plan, including the plan in this case, is not a pure pot plan but a hybrid—a pot plan with a floor.

Depending on the allowance of claims after confirmation, the dividend to unsecured creditors may stay the same or increase, but it can never fall below a minimum – here 7%.

In the instant case, the Debtor argues that his plan is a pure pot plan and so the Trustee's demand for a plan amendment to take into account the unanticipated but timely and unobjected-to Ford claim must be denied. In essence the Debtor is asking me to ignore the confirmation order and find that the incorporated language that unsecured creditors will receive a minimum of 7% of their claims does not establish a floor.

Had the Debtor wished to propose a pure pot plan he could have done so by modifying or clarifying the MLBR official form Chapter 13 plan to include unambiguous language to that effect and sought the incorporation of such language into the confirmation order. Having failed to do so, the Debtor is bound by the terms of the plan he presented and this Court confirmed.

It is true that a Chapter 13 debtor generally lacks input into the official form confirmation order which is prepared by the Chapter 13 Trustee and that it was the confirmation order's reference to a minimum payment to unsecured creditors that is the basis for my characterizing the instant plan as a hybrid pot plan. To avoid confusion, in future cases when the Trustee submits a proposed confirmation order providing for a minimum dividend to unsecured creditors and the proposed plan contains no such provision, I will strike the reference to a minimum dividend before confirming the plan. Nevertheless, a debtor's attorney intending to propose a pure pot plan would be well advised to ensure that the plan is clearly delineated as a pot plan notwithstanding that the official form plan provides for the inclusion of a percentage merely to illustrate what unsecured creditors would receive based on an estimate of allowed claims.

**CONCLUSION**

The Debtor's confirmed plan in its current form will not result in holders of allowed unsecured claims receiving a 7% dividend. Either the plan must be amended or Ford's claim disallowed. The Debtor shall file an amended plan and amended Schedules I and J as required by Rule 13-12(a) of MLBR App.1 or an objection to Ford's claim within 30 days. A separate order shall enter.

May 28, 2010

_____
Melvin S. Hoffman
United States Bankruptcy Judge